is asking this court to vacate the 41-month sentence imposed by the District Court in this case and to remand the case for resentencing. In his appeal to this court, he has raised two issues. I do not plan, unless the court has questions, to address the second issue, which is whether possession of this particular weapon was a crime of violence for career offender purposes. I think this panel is bound by Mobley, and it's been raised as a preservation issue. Your position is preserved. Thank you. Without oral argument. I didn't think I would convince you anyway, Judge Traxler. Always listening. Yes, you do. With respect to the first issue, about whether the District Court committed a reversible procedural error, as I read the government's brief, and I certainly don't want to put words in Mr. Rubin's mouth, but it seems to me the government is conceding that there was procedural error here, or in one form or another, saying that indeed the court did not explain its reasons for the sentence that it imposed. So it comes down to a question of harmlessness. And we would argue that in a case like this, where the defendant makes an argument for a below-guideline sentence and gives what are non-frivolous reasons, and he gave two reasons here that I don't think can be fairly characterized as frivolous. First, that the reason he possessed the weapon was because he was in fear of being assaulted. Now, the government says that was not a justification for him to possess a weapon, and that's absolutely right. It was not a justification. But the test is not whether, for sentencing purposes, the test is not whether it's justified. The question is, does his reason for possessing that mitigate the sentence that should be imposed? And so this was an argument for mitigation of the sentence. The second point was that he was a sick man, that he'd had a very serious illness, colon cancer, that he'd had his colon removed, that he had, during the time the defense attorney had known him, had lost 40 to 50 pounds. Those are relevant. His reason for possessing the weapon... But he had possessed weapons before on a number of other occasions prior to when he was diagnosed with cancer, correct? That's correct, Your Honor, yes, on one occasion. He was found with a similar sort of weapon. And then there were incidents of insolence and other things, but yeah, there was one other weapon possession. And Judge Thacker, I think this goes to a point, the district court, and we are not arguing that the district court was required to accept the argument, but what we are saying is that under the case law, the district court did have to say something. A district court does not have to say very much, but it should say something. And when you look at this record, all the court said was it had considered the 3553A factors, the relevant 3553A factors, but there's no statement as to how those factors applied to this individual. And the cases require the court to demonstrate an individualized consideration. And there were individualized considerations to be taken into account here, and the court simply did not address them. And we argue that this court, therefore, does not have a basis to determine whether the court properly considered the factors, and that should not be a harmless error. If you are being put in a position where you have to comb through the pre-sentence report and the record to find reasons that the district court could have imposed the sentence it did, that is not your role. Your role is to have enough before you that you can review the reasonableness of the sentence. Whatever we held in prior cases, if we conclude that the reasons or the mitigating factors presented by the defendant were, in our characterization, weak, wouldn't that suggest that this case need not go back to the district court? Your Honor, I think that in those cases, there has always been something the judge said that you could look to. Besides just a bare statement, even the battle case, which the government cites, the district court did more there than simply said, consider the factors in the pre-sentence report. I have not found a case where what Judge Fox said here is all the court has said. There's always something else for this court to look at. And again, it doesn't have to be very much. I mean, this case... Mr. Gordon, do you have any doubt that the result is going to change in this case if we send it back? That might depend, Your Honor. I don't mean to evade it, but that might depend. One of the things Mr. Phillips may have going for him, maybe his comportment, maybe what he has done in the time since this sentencing might influence the judge. Maybe he's reformed his ways. Maybe if the judge explains why he's imposing the particular sentence, defense counsel may be able to say something that would change the judge's mind. One of the reasons I think a court has to say something is, suppose the court has misapprehended the argument that's being presented. You're never going to know that if the court doesn't engage somehow with the defense attorney. If he had said, I've considered your arguments, but have rejected them in the context of the other evidence presented that cut against a variance or a departure in this case, is that enough? That might be. That might help your client or allow a defense counsel to make any kind of rebuttal argument. It just seems rather mechanical to me to require that little, and yet to say here that we ought to send this case back to require that additional sentence or phrase from the judge. Well, the problem with this case is that I think if you hold for the district court here, that I don't see how procedural error really survives as a consideration for the court. Well, the error exists. It's just it's harmless in the context of this particular case. We're not suggesting that it's harmless in every context. Well, I think if it's harmless in this case, I can't imagine a case where you couldn't find virtually every pre-sentence report I have seen. You can find things to justify the sentence that the court gives. I think that's part of the point for having the court say something. I mean, there are cases where no matter what the defendant would have said wouldn't have made a difference, but this court would never say in a case where the defendant was not allowed to allocute, well, he couldn't have mitigated the sentence anyway. We're not going to send it back. You would. So, again, you're not asking the district court to do very much. Let me ask you this, Gordon. You're an experienced attorney. Yes, sir. And let's assume the purpose of what I'm going to talk about that I agree with. Yes, sir. There was a procedural error. Here's what concerns me about all of these situations, because we get a lot of appeals on this basis. Is there not a responsibility on the lawyers to remind the judge, to advise him that he has not complied with the procedural requirements? In other words, I look at these cases and I think, you know, sometimes judges just forget to articulate what they're thinking, and if this error was called to their attention right then, the problem could be solved right then without all of us having to go through this elaborate appellate process to, in effect, send back for the doing of something that could have been done right then if the judge had just been reminded. So my question basically is to you. It has nothing to do, really, with the merits of any of the issues today, but don't the lawyers have some responsibility to remind the judge, when they see something like this happen, that he didn't give the reasons for his ruling to say, Judge, you haven't explained why or how you view the objections we raised or the grounds we've argued for a particular sentence? Judge Traxler, I have a legal response and a practical response. Okay. I'm really interested in the practical. Okay. Yes, sir. Give me both. Well, the legal response, very briefly, is Lynn. Is Lynn. Is Lynn. By asking. There's no doubt, that's beyond debate, that your issue is preserved. I'm just thinking as a practical matter. And as a practical matter, I know there are some judges, I would never open my mouth while they were pronouncing a sentence. Having practiced law, I'm aware of those, too. I'd be going out the door with my clients in handcuffs if I opened my mouth. Yes. So there is that aspect of it that can happen. And it would be impossible for this court to tell on a case-by-case basis. But I actually think your point is well taken. I think if defense counsel can do it, defense counsel should do it. And I'm not saying it has to be defense counsel. I mean, the government has the same interest in avoiding extra work or needless work as a defense lawyer. So I'm not saying that it's the responsibility of the defense lawyer. I just think, I look at these cases, I think, gosh, this problem could have been eliminated if somebody had just reminded the judge. Yes, sir. There'd been no articulation. Yes, sir. I agree with that. And I know myself and just personally, I certainly don't ever want to sandbag the district court and say, oh, great, an error, and keep my mouth shut. I don't think that's fair. And, again, yeah, it is an arduous process to appeal. And if the appeal is won, the defendant has to be taken back for resentencing. That's an arduous process. Again, this case, I simply, I worry, quite honestly, if you affirm it on this fair record where I would argue the district court said nothing in response to Mr. Phillips' argument that it's going to initiate procedural reasonableness review and is always going to be found harmless. And I would ask the court not to do that because I don't think that's consistent with Gaul, with Lynn, with your cases. With Savian Matute, the harmless error analysis is based on the judge saying things that allow you to determine that it's going to be the same sentence. So for those reasons, respectfully, unless the court has further questions, I'll reserve the balance of my time. Thank you, Mr. Gordon. Thank you. Mr. Rubin. Good morning. May it please the court. Bill Rubin representing the United States. Although we do acknowledge that the district court should have said more in this case, this case is a good example of this court's harmless error analysis. And the case that I would direct this court to compare it to is United States v. Boulware, where this court confronted a very similar situation, where the district court did not give any indication that it addressed the defendant's argument. And this court affirmed, assumed an error in that case, and affirmed saying when we look at the record and context of the hearing, and when we look at the weakness of the defendant's argument, we have fair assurance. As I recall, the weakness, part of the problem with Boulware's argument was that they were generic arguments that applied to the run-of-the-mill defendant. This defendant made some individualized arguments for variance. His health and the particular circumstances of his offense. So isn't this a bit of a stronger case than Boulware? No, Your Honor, I don't think so. And the reason is I think actually the defendant in Boulware did make individualized arguments. What she said was that she led several community groups. I think she ran a cosmetology school. She had a lot of kids at home that she was the caretaker for. Those may be common for lots of defendants, but they are particularized to her. And this is the key comparison between that case and this one. What this court recognized is she didn't offer any evidence to make her case different. Now, my colleague says that this was two arguments during the sentencing hearing in this case. One was the fear, and the other one was his weakness. To me, reading the sentencing transcripts, it seems like he was saying that he was in fear due to his weakness, and it's one argument. But we have evidence of the cancer, of course, in the PSR. That is there. But what we do not have is one shred of evidence that he was vulnerable in prison. In fact, what we have, if we look at the record in this case— What else was he supposed to bring that he's vulnerable in prison, other than him telling you what his medical problem was? Well, Your Honor— Go ahead. I'm sorry, Your Honor. He said specifically that he'd been attacked in prison. Now, there could be prison records on that or prison medical records. Was that challenged? The truthfulness of that statement challenged by the government? The government didn't directly challenge that statement, Your Honor. But at the same time— Did you say he's making it up that he's— I'm not, Your Honor. We don't find it worthy of belief. I'm not, Your Honor. And nor do I think that the defendant in Boulware was making it up either. But the court said, you need to present some evidence to show that you in particular are vulnerable. And this defendant— Maybe he could get prison records. Maybe he couldn't. What he could certainly have done was testified or allocated or given a specific instance. He just said— And this was a very short— We've talked about the district court not saying much, but it should be stated that defense counsel didn't say very much either. He said he's had colon cancer. He's had much of his colon removed, even though that was actually after the offense conduct in this case. When his colon was removed, that was in 2013. He said he's been assaulted several times, and most recently he's been vulnerable. That was the extent of the argument. Now, I think a lot of defendants would say that they're vulnerable in prison or that they fear for their safety in prison. And just like the defendant in Boulware, this court should ask for more than that if the district court is supposed to consider that a strong and credible argument. Compare that to the Lynn case. And I think really— I'm sorry to interrupt you. Sure, Your Honor. But my experience when I was a district judge was that if the defense lawyer made representations to the court as to the condition of his client or any circumstances regarding his client, if the district judge found that unbelievable or if it was challenged by the government, then you might call the defendant to the stand or produce whatever evidence was necessary to verify it. But where the representations made by the defense counsel are unchallenged, my experience was that they were therefore accepted as true. And, Your Honor, I understand that. And I think I should clarify that it's not so much an issue of whether that statement was true or false so much as individualizing that statement to make this defendant different than any other defendant who could say prison is a dangerous place. This court discussed that in Mobley. Prison is a dangerous place. I needed a weapon to protect myself. You can be vulnerable for lots of reasons. You can feel vulnerable for even more reasons. Now, a description of attacks, a explanation for how, since his cancer diagnosis, he's become particularly vulnerable, I don't know whether that would have been enough to make that a compelling argument. I'm not sure that it would be, given this court's statements about violence in prison in Mobley, but maybe. But we don't have that. And that was defense counsel's work. To make that argument strong, he had to provide the evidence. We're actually, I mean, the district court has a burden, too, and the district court really did say next to nothing about the sentence and the 3553 factors. So the government, as Judge Traxler pointed out, was sitting there, too, and said nothing to help make the record that your conceding should have been made. That's right, Your Honor. And I would agree with my colleague that both attorneys should say something, and that would be the better practice here. And that is something I can say as an aside that we're educated on as a good practice, is we don't want to have these kind of appeals. We want to settle that in the district court if it's possible. So, Chief Judge Traxler, to your practical concern, I would like to address that practical concern, though. And importantly, and I think my colleague did refer to this a little bit, if the harmless error analysis is gone here, it actually would incentivize, and I'm not suggesting any particular defense counsel would do this, but it would actually incentivize silence by defense counsel because you get a re-sentencing. But it would give you an incentive to say something. It would. I agree that it would. If you like coming up here, we're always glad for you. And I'm always happy to come up here, but we certainly... You're in government. I actually already think you have an incentive to say something. I do. Yes, Your Honor. So... I think we do, Your Honor. And ideally, both parties would want to, but it would incentivize the other direction if there were no harmless error analysis. And Mr. Gordon actually mentioned, when he talked about... You asked why it would be different on remand, and he said, well, his conduct since then might be mitigating, which is kind of an interesting statement, that that conduct had not even occurred during this sentencing. So there would be an incentive defense counsel, if he wasn't happy with that sentencing, maybe he can get another one in six months, and he'll have improved, and he'll have some good reasons to come in and get a better sentence. And that's not really in the interest of efficiency and finality that this court recognized in Boulware, and recognized in Lynn, even though the court ultimately reversed. That increases the burden on you, then, to correct an obvious error. Let me ask you this. As Mr. Gordon pointed out, Lynn establishes the fact that if you raise these issues, your position is protected for appeal. Let's suppose that at the conclusion of the sentencing, after the sentence has been given, the district judge says to the attorneys, have I complied with all procedural rules in handing down this sentence? And both sides say, yes, you have, Judge. Have they then waived their right to appeal on grounds of procedural error, do you think? I think that's a difficult question, and I do think it falls outside of what Lynn was analyzing. I think maybe yes, Your Honor, at least procedural errors that would appear on their face. There could be maybe some more esoteric procedural errors that it might be somewhat difficult on counsel to hold them accountable for not catching something very minor, a very minor guideline calculation issue. But something such as the explanation for the sentence, when as we've discussed today with both attorneys, both parties are in a position to say, Your Honor, I think we need a better explanation than that. If the court asks, have I, specifically if I could make your scenario more specific, have I explained this sentence sufficiently? And the parties say, you have, Your Honor? That sounds like waiver. It's different than what Lynn was addressing, because that was forfeiture. This sounds like specifically it could be waiver. The parties have said, I have no problem with that, Your Honor. Still, it seems to me the best practice is for the lawyers, if the judge has said nothing, to remind him, you need to articulate your views with regard to the grounds and arguments made by the defense counsel. And you see a lot of this. I mean a lot from all over the circuit. This is a common issue. It's repeated over and over and over again,  I think that would certainly help, Your Honor. An education of attorneys on both sides to make sure they realize that's part of the sentencing hearing obligation is to make sure they raise any concerns at the end of sentencing, I think would be helpful. In this case, unfortunately, we don't have that. But the reason this case, and I have to disagree with Mr. Gordon that if the court affirms in this case, it will destroy the procedural analysis. We know that it won't, because there's the cases in Lynn and Boulware, which were very similar, but on their key differences, one was affirmed as harmless error and the other was reversed as not being harmless. There, and in Lynn, the defendant actually had at least plausible argument that they had presented. They were on the very border of being career offender. It was very old offenses. They also had a very strong argument that they were more of a courier than a kingpin and they were being sentenced at a very high level as if they were high up in the drug organization. That may not be something the court would have to credit, but this court said, we don't really have fair assurance that the court addressed that argument. It seems pretty strong. And we don't know based on this record. But this is different, and I don't want to fail to bring up a very important part of this record, which is defendant's history before and during his time in prison, which has to be considered if we're accounting for whether it was something that would compel the court this argument about weakness. And this defendant wasn't threatened. He was threatening. If we look at his history before, a sexual battery in 1994, a 1999 violent robbery, striking a homeowner with a tire iron, a domestic assault with bodily harm in 2002. But in a lot of ways, it actually gets worse in prison. Not once, but twice, was he caught with improvised weapons before this incident. Once with two shanks, and that was in 2009. And in 2010, he was caught with a weapon very similar in description. That one was a lock attached to a lanyard. This one was a piece of conduit attached to an improvised rope, but very similar in description. Is that information the PSO? It is, Your Honor. And it's described in detail. And I would actually like to turn to one part of that, where in April 2010, the PSR describes how defendant, and I'm going to abbreviate this, especially to remove some of the profanity from it, but the defendant started threatening a guard, threatened at least twice to harm him, to put something in him, and then approached the officer with his hands concealed underneath his shirt. When the BOP staff member ordered the defendant to submit to a search, Phillips began to walk away. As the BOP staff member requested assistance, Phillips turned aggressively toward the officer while brandishing a lock attached to a 12-inch lanyard. This is the record that was before the district court. This defendant was not threatening, or was not threatened, he was threatening. And so when I discussed that the defense counsel didn't put evidence to show that he was threatened, it's not so much that that statement, the court just thought that the defense counsel was making it up, so much as if you want to come against that evidence of this being an aggressive and threatening defendant, the defense counsel should make that argument. The defendant could have allocated, and he could have described, I was threatening, and now all this stuff has happened to me. We don't have any of that. And while that doesn't relieve the district court of the burden of at least saying, I don't find your argument compelling, it does allow this court to look and say, that is a weak argument. It is not a strong argument in that we don't think that this district court would have credited it if it had said more. And that's the test in harmless error. It's whether this court has fair assurance that if the district court had addressed this argument, it would have reached the same sentence. And Judge Diaz, I think you asked earlier, do you think this will change on remand? And I don't. On this record, I don't think it will change on remand, because defendant's history, and the other piece of this from the Bulwer case, is that you look to the record in the context of the hearing. There wasn't much discussed at this hearing. First, defense counsel challenged his career and his offender status. And then he made this argument for a variance, both of which he talked just about his fear in prison being one of the main motivators. That was basically the entirety of the hearing. And this court, in an unpublished case we cited in our brief, Velazquez-Penales, noted that when the court sat through basically the only argument in the hearing, this court's willing to assume that the court heard that argument and understood it. And I think that gives due credit to the district judge. He was clearly there listening to this argument. The fact that he chose not to address it, and this is that quote that gets used a lot from the Rita case, he must have believed there was not much more to say. And again, we certainly acknowledge that he could have said more, that he should have said more, and that that is why we conceded procedural error. But we do not think this case is Linn. This case is Bulwer. And for that reason it should be affirmed. If the court has other questions I'd be very happy to answer them. Okay. Thank you, Mr. Rubin. Thank you. I understand your position. Gordon, reply. Thank you. First, I would like to apologize. Mr. Rubin's absolutely right. I neglected the Judge Thacker, when you asked about prior incidents, I neglected the one in the locker. My mind was focused on what he actually had with him. And there were two times when he was caught with objects on him. And then once with the locker. Just very, very briefly, I don't see how Mr. Rubin's, if the court adopts Mr. Rubin's analysis here, the government's analysis, I don't know why it doesn't work on Linn. I don't know why if a defendant offers very compelling reasons for a mitigated sentence, and the judge simply says, I have considered the pre-sentence report and the 3553A factors, and then imposes a within-guideline sentence, and then the government comes back and says, well, your honors, look at the pre-sentence report. This is an awful person. Obviously, the judge thought he was an awful person and rejected the, I don't know why it doesn't work for a case like Linn, if it works in a case like this as well. And Judge Traxler, I think from a practical standpoint, I think you may have found the answer, which would, I think if a judge at the end of the hearing were to say, you know, Mr. Gordon, you asked for a downward variance. You gave reasons. Have I adequately addressed your reasons, and you know, and for the, in the course of imposing the sentence, rejecting your request for a variance, have I adequately, to your satisfaction, explained or addressed your concerns? I think if I say, yes, I've waived it, I think that issue is waived, even with Linn. I don't think it's preserved. And that might be the answer. A simple statement by the district court, you know, have I adequately addressed it? Now, in cases where a variance has been requested, I think that that might very well be the solution to all of this. I can tell you that I can remember sentencing a person once. Arguments were made about several arguments, and I ruled on each one. And then defense counsel said, Judge, have you considered these factors in combination? And I had not articulated that, you know, that yes, individually, I felt like none of them individually warranted a change in sentence, but I really appreciated defense counsel reminding me that, you know, I also needed to consider the factors in combination. I can just tell you that many times it's appreciated when there's, and it's just a matter of forgetting, and counsel, either side, reminding the judge, you know, that there's one other, or there are other statements you need to make on the record so we know what you're thinking. Yes, and I think the court's point is very well taken, and I won't beat this, but I just would like to say one more time, yeah, I have yet to represent a Boy Scout, and Mr. Phillips is no Boy Scout, but I think, his record, his concern about being vulnerable, he had cancer. That's significant. I mean, that's a significant difference between, you know, the prior record, and maybe even his prior weapons possessions, and his aggressive conduct in prison, and what followed. I think the cancer is a significant point, and it was a point that was made, and it was not addressed, and so I think it was clearly procedural error. I would urge the court not to apply the harmless error analysis, or not to affirm on a harmless error basis, given this record, where there was no engagement with the defendant's argument by the district court, none. I know the court has no further questions. I would ask the court to vacate the sentence and remand. Thank you. Thank you, Mr. Gordon. We'll come down and greet counsel, and then go into the next case.
judges: William B. Traxler Jr., Albert Diaz, Stephanie D. Thacker